# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**CHRISTOPHER BORIS WILSON,**

      **Plaintiff,**

v.                                                           **CASE NO. 22-3016-SAC**

**(FNU) KELLY, et al.,**

      **Defendants.**

## MEMORANDUM AND ORDER
## TO SHOW CAUSE

Plaintiff brings this pro se action under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis. Although Plaintiff is currently an inmate at the Lansing Correctional Facility in Lansing, Kansas, his claims arose during his detention at the Wyandotte County Detention Center ("WCDC"). On March 2, 2022, the Court entered a Memorandum and Order and Order to Show Cause (Doc. 8) ("MOSC") granting Plaintiff an opportunity to show cause why his Complaint should not be dismissed or to file an amended complaint to cure the deficiencies set forth in the MOSC. The Court screened Plaintiff's Amended Complaint (Doc. 10) and entered a Memorandum and Order (Doc. 12) ("M&O") directing the officials responsible for the operation of the WCDC to prepare a *Martinez* Report. The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 12, at 2.) The *Martinez* Report (Doc. 23) has now been filed and the Court will screen the Amended Complaint in light of the Report. The Court's screening standards are set forth in the Court's MOSC.

1

## I. Nature of the Matter Before the Court

Plaintiff alleges in his Amended Complaint that on December 13, 2021, he was in an intake cell at the WCDC adjusting the screws on the arms of the wheelchair he had been provided to use because he was in an air cast. The screws were inserted upside down making the wheelchair painful to use. Deputy Kelly and Sergeant Panjada rushed into the cell and announced they were taking the wheelchair. Plaintiff tried to explain to Kelly what he was doing, and when Kelly refused to listen, Plaintiff tried to speak to Panjada. Plaintiff alleges that, for no reason, Deputy Kelly then punched Plaintiff in the face, breaking a tooth, and grabbed and twisted his arm, injuring his back and shoulder.

Plaintiff alleges excessive force under the Eighth Amendment. Plaintiff names as defendants Deputy Kelly and Sergeant Panjada.

## II. Discussion

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted). Claims of mistreatment while in state pretrial confinement are not covered by the Fourth Amendment or the Eighth Amendment. *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019). They are assessed under the Fourteenth Amendment. *Id*.

The Supreme Court held in *Kingsley v. Hendrickson* that "the appropriate standard for a pretrial detainee's excessive[-]force claim is solely an objective one" and that therefore "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (quoting *Kingsley v.*

2

*Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473–74, 192 L. Ed. 2d 416 (2015)); *see also Colbruno*, 928 F.3d at 1163 ("[T]here is no subjective element of an excessive-force claim brought by a pretrial detainee.").

Regarding the alleged excessive force on December 13, 2021, the Report provides in relevant part that:

> The incident occurred at approximately 1155 hours. [Video of Incident.] Deputy Lorenzo Kelly (Kelly) was assigned to booking and release in the intake area and was conducting cell checks when he observed Wilson taking apart a wheelchair he had been given to use. [Video of Incident, Affidavit of Paul Panjada, Affidavit of Lorenzo Kelly]. When Deputy Kelly opened the cell door, Wilson became confrontational and aggressive. [Video of Incident, Affidavit of Paul Panjada, Affidavit of Lorenzo Kelly]. Wilson threw a brown paper sack and talked in an aggressive tone about not receiving a lunch. [Affidavit of Paul Panjada, Affidavit of Lorenzo Kelly]. When Sergeant Panjada advised him that he had been fed, he threw another paper sack and attempted to pick up the wheelchair, and then shoved it towards them. [Video of Incident, Affidavit of Paul Panjada, Affidavit of Lorenzo Kelly]. Wilson then began moving toward Sergeant Panjada in an aggressive and threatening manner with his fists clenched. [Video of Incident, Affidavit of Paul Panjada, Affidavit of Lorenzo Kelly]. Wilson was instructed to calm down by Deputy Kelly but he continued moving towards Sergeant Panjada in an aggressive manner. [Affidavit of Paul Panjada, Affidavit of Lorenzo Kelly]. Using a "soft empty hand control technique", Deputy Kelly grabbed Wilson's jumper in the chest area and directed him backward towards his cot. [Video of Incident, Affidavit of Paul Panjada, Affidavit of Lorenzo Kelly]. He was then turned into a kneeling position with his knees on the floor and his chest on his mattress. [Video of Incident, Affidavit of Paul Panjada, Affidavit of Lorenzo Kelly]. Deputy Kelly then placed his right arm behind his back and utilized a wrist lock to ensure he could not turn against them. [Video of Incident, Affidavit of Paul Panjada, Affidavit of Lorenzo Kelly]. Deputy Kelly did not punch Plaintiff. [Video of Incident, Affidavit of Paul Panjada, Affidavit of Lorenzo Kelly].

(Doc. 23, at 3).

Medical was called to evaluate Plaintiff for any injuries that may have occurred. *See* Affidavit of Lorenzo Kelly, at 2; Affidavit of Paul Panjada, at 2. The Report further states that "[t]he only medical injury noted was a small cut with bleeding on the left side of Wilson's tongue. [Affidavit of Dee Dee Gregory, RN, BSN, HSA, at 2]."

The Court reviewed the video of the incident, which captured approximately six minutes of the interaction in Plaintiff's cell. The video shows Plaintiff sitting on the bunk as he does something with the wheelchair in front of him. He removes a part, which looks like a piece of metal about a foot long, from the wheelchair. Panjada and Kelly enter the cell, proceeding directly to Plaintiff and taking the piece from him. They appear to be talking to him, and they pull the wheelchair away. Plaintiff stands up and throws a paper bag at them. Plaintiff then approaches Panjada and appears to be saying something. The video has no sound, and it is difficult to see if his fists are clenched as Defendants assert. Kelly appears to grab Plaintiff by the throat or upper chest area and slams him back into the corner of the cell. It appears that Plaintiff's head hits the wall. Kelly is bent over Plaintiff for a couple minutes, and it is not possible to see what he is doing as the camera is positioned in the opposite upper corner of the cell. However, it does not appear that Kelly punches Plaintiff in the face at any point. The nurse comes in as Kelly is still bent over Plaintiff in the corner of the cell. She crouches down and appears to examine Plaintiff then leaves.

Not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action.") (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")). In *Snyder v. Spilde*, the District Court of Colorado considered an incident similar to the one upon which Plaintiff's claim

4

is based and found as follows:

> Merely grabbing and twisting Mr. Snyder's arms does not allege a constitutional violation. *See e.g., Norton v. The City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (dismissing claim in which prison guards were alleged to have injured prisoner by grabbing him around his neck and twisting it because the guards' actions were not objectively harmful enough to establish a constitutional violation); *Reed v. Smith*, No. 97-6341, 1999 WL 345492, at *4 (10th Cir. 1999) (dismissing excessive force claim based on allegations that prison officials grabbed inmate, tried to ram him into a wall, and dragged him while walking him through the prison); *Marshall*, 415 Fed. App'x at 853–54 (dismissing excessive force claim based on allegations that corrections officer dug his fingernails into prisoner's arm without cause to do so resulting in redness and bruising). *Accord De Walt v. Carter*, 224 F.3d 607, 610–11 (7th Cir. 2000) (holding that shoving a prisoner into a doorframe, which resulted in bruising on his back, did not state a constitutional violation); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (holding that bumping, grabbing, elbowing, and pushing a prisoner was "not sufficiently serious or harmful to reach constitutional dimensions."); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) (pushing cubicle-cell wall onto prisoner's leg, causing bruises, was insufficient use of force to state a constitutional violation); *Olson v. Coleman*, 804 F. Supp. 148, 149–50 (D. Kan. 1982) (single blow to prisoner's head while escorting him into prison, causing contusion, was de minimis use of force not repugnant to conscience of mankind).

*Snyder v. Spilde*, No. 15-cv-2169-GPG, 2016 WL 1059612, at *3–4 (D. Colo. March 17, 2016).

The Report further provides that Plaintiff has failed to exhaust his administrative remedies. (Doc. 23, at 6.) "Plaintiff filed many grievances that mention the subject matter but did not ask for the relief he is now seeking in this court, or fully follow the grievance procedure." *Id*. (citing Doc. 23-5, Inmate Orientation, Guidelines, and Rules; Doc. 23-6, Wyandotte County Detention Center Policy F-100 Detainee Grievance; Doc. 23-7, Inmate Communication Forms Records (Electronic); Doc. 23-8, Inmate Communication Forms (Conventional)).

In light of the *Martinez* Report and on further review of the Amended Complaint, the Court is considering dismissal of this matter for failure to state a claim on which relief can be granted

5

and for failure to exhaust administrative remedies. Plaintiff has failed to meet the objective standard for an excessive force claim. Plaintiff will be given an opportunity to respond to the *Martinez* Report and to show good cause why dismissal should not be entered. Failure to respond by the Court's deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **November 25, 2022,** in which to respond to the *Martinez* Report and to show good cause why this action should not be dismissed for failure to state a claim.

**IT IS SO ORDERED**.

Dated October 25, 2022, in Kansas City, Kansas.

<u>S/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE